# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **LINDA CALDWELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:16-cv-0036** |
| | ) | **Judge Aleta A. Trauger** |
| **SSC LEBANON OPERATING COMPANY LLC d/b/a LEBANON HEALTH AND REHABILITATION CENTER et al.,** | ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM</u>

Before the court is the Motion to Compel Arbitration and Stay Lawsuit (Doc. No. 20) filed by defendants SSC Lebanon Operating Company LLC, doing business as Lebanon Health and Rehabilitation Center; SavaSeniorCare Administrative Services, LLC; and SavaSeniorCare Consulting, LLC (collectively, the "Nursing Home Defendants"). Plaintiff Linda Caldwell filed an "Initial Response" and "Initial Memorandum" (Doc. Nos. 24, 25) in opposition to the motion in which she asserts that the arbitration agreement is not enforceable and, in the alternative, requests that the court defer ruling on the motion and permit the parties to conduct arbitration-related discovery. The court construes the Initial Response (Doc. No. 24) as a motion to conduct discovery and to deny or defer ruling on the Motion to Compel Arbitration until after such discovery has been conducted and after the parties supplement their motion papers. The Nursing Home Defendants, with the court's permission, filed a Reply Memorandum in which they argue that discovery is not necessary and that the arbitration agreement is valid and enforceable as a matter of law.

For the reasons set forth herein, the court finds that the Nursing Home Defendants have

failed to establish the existence of a valid agreement to arbitrate. The court will therefore deny the Motion to Compel Arbitration and deny as moot the plaintiff's motion to conduct discovery related to the validity of the arbitration agreement.

## I.   PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Linda Caldwell, as next of kin of Sarah Katherine Rodgers, deceased, and on behalf of the wrongful-death beneficiaries of Sarah Rodgers' estate, filed a complaint in the Circuit Court for Wilson County, Tennessee on December 2, 2015, against the Nursing Home Defendants and against SMV Lebanon, LLC; SavaSeniorCare, LLC; Tennessee Holdco, LLC; and SSC Submaster Holdings LLC (the "Corporate Relative Defendants"), asserting negligence claims under the Tennessee Health Care Liability Act, Tenn. Code Ann. § 29-26-101 *et seq.*, as well as common-law wrongful-death and survivor claims, based on the care and treatment of Sarah Rodgers while she was a patient at Lebanon Health and Rehabilitation Center, the nursing home ("Nursing Home") operated by the Nursing Home Defendants. All defendants removed the action to federal court on January 15, 2016 on the basis of diversity of citizenship.

Thereafter, all defendants filed Answers, and the Nursing Home Defendants filed their present Motion to Compel Arbitration. While that motion has been pending, the Corporate Relative Defendants reached an agreement with the plaintiff to stay the proceedings as to the Corporate Relative Defendants only. The court entered a Consent Order staying the proceedings against those defendants pending resolution of the plaintiff's claims against the Nursing Home Defendants. (Doc. No. 30.)

In support of their Motion to Compel Arbitration, the Nursing Home Defendants assert that Sarah Rodgers was admitted as a resident at the Nursing Home on May 12, 2012. They have attached as an exhibit to their motion an unverified copy of a written contract, titled "Dispute

Resolution Program" ("DRP"), which the Nursing Home Defendants allege was entered into by the Nursing Home and by Ralph Douglas Whiteaker, as the Personal Representative of Sarah Rodgers, at the time of Ms. Rodgers' admission as a resident at the Nursing Home. (*See* Doc. No. 21-1.)

The DRP states that the program was established as "an alternative to the expensive and lengthy process of litigation" for the purpose of resolving "disagreements regarding the care we provide to our residents and related issues." (DPR, Doc. No. 20-1, at 2.) The DRP states in bold, capitalized letters: "**BY AGREEING TO PARTICIPATE IN THE DRP, THE PARTIES WAIVE THEIR RIGHT TO A JUDGE OR JURY TRIAL.**" (*Id.*) The term "Parties" is defined to include "the resident and all family members who would have a right to bring a claim in state court on behalf of the resident or the resident's estate, a legal representative, or any other person that may have a cause of action relating to the resident's stay at the facility." (*Id.*) The term "parties" also includes "the facility itself, any parent or subsidiary of the facility, any affiliated company, any of the facility's officers, directors, mangers, employees or agents." (*Id.*) The DRP states in capitalized letters that the agreement is binding on the resident's family, heirs, successors, assigns, and legal representatives, as well as on the facility and all its parents, affiliates, subsidiaries, owners, officers, directors, employees, successors, assigns, agents, insurers and representatives. (*Id.* at 4–5.)

The DRP provides that the Federal Arbitration Act ("FAA") controls and applies to the arbitration of any dispute and that, otherwise, the agreement is governed by the laws of the state in which the facility is located.

The Nursing Home Defendants assert that the DRP was signed by Douglas Whiteaker on May 7, 2012 in his capacity as Sarah Rodgers' representative. Ms. Rodgers' name, however,

does not appear anywhere on the DRP, identifying her as the resident or otherwise, and the DRP was not signed by Sarah Rodgers. The signature block to be utilized "[i]f the Resident is mentally competent to consent to this Agreement under state law" is blank. (*Id.* at 5.) Below that blank signature block is another signature block to be used "[i]f competent resident is unable to physically execute the Agreement and authorizes a representative to sign Agreement on the resident's behalf, sign here." (*Id.*) On the line provided for the "Signature of Representative" appears a signature that is basically illegible but might plausibly be construed to read "Douglas Whiteaker." (*Id.*) On the following page, a signature block is provided for the resident's representative to complete "[i]f the resident is adjudged incompetent." (*Id.* at 6.) That signature block is blank.

The Nursing Home Defendants also assert that the DRP was signed by a representative on behalf of the Nursing Home. The typed name MICHELLE CRUTCHFIELD and a signature that appears to be that of Michelle Crutchfield appear in the signature block provided for "Facility Witness #1," just below the signature of Douglas Whiteaker, indicating that Ms. Crutchfield witnessed the signature of the resident's representative. (*Id.*) On the next page is a signature block for "Facility Witness #2." That signature block is blank. At the bottom of the same page appears the signature block for "Facility Agent." That signature block, too, is blank.

The Nursing Home Defendants submitted, with their Reply Memorandum (Doc. No. 31), a copy of the Resident Admission Agreement. (Doc. No. 31-3.) This document contains a space on the first page for identifying the "Resident" referred to in the agreement. That space is blank. (Doc. No. 31-3, at 5.) On the final page, the signature block for "Resident" is again blank, but a signature that appears to be that of "Douglas Whiteaker P.O.A." appears in the block provided for "Responsible Party." Michelle Crutchfield appears to have signed the signature block "For

the Facility." (*Id.* at 13.)

The Nursing Home Defendants also submitted, as an exhibit to their memorandum in support of their motion, copies of a Durable General Power of Attorney ("General POA") and Durable Power of Attorney for Health Care ("Health Care POA") executed by Sarah Katherine Rodgers, naming Douglas Whiteaker as her attorney-in-fact and agent. On the basis of these documents, the Nursing Home Defendants assert in their Motion to Compel Arbitration that Douglas Whiteaker, on behalf of Sarah Rodgers, entered into a binding and valid arbitration agreement with the Nursing Home that covers the claims made in this action and that is binding on the plaintiff. The Nursing Home Defendants request an order directing the plaintiff and "any other party in interest" (Doc. No. 20, at 3) to proceed to arbitration within the terms of the arbitration agreement to resolve the dispute and staying this action while the parties proceed with arbitration.

In her response, the plaintiff contends that a valid agreement was never formed, as a matter of law, because (1) the General POA and Health Care POA did not bestow on Douglas Whiteaker the authority to bind Sarah Rodgers to an arbitration agreement; (2) the DRP does not identify Sarah Rodgers as the resident to be bound by the agreement; and (3) because the DRP was not signed by an authorized representative of the Nursing Home, mutual assent between Ms. Rodgers (assuming Mr. Whiteaker was authorized to sign on her behalf) and the Nursing Home was lacking and no valid arbitration agreement exists. The plaintiff also asserts that, even if a valid contract was formed, it is unconscionable and therefore unenforceable. The plaintiff requests that the court deny the Nursing Home Defendants' motion or, in the alternative, defer ruling on the motion and permit the parties to conduct discovery limited to the issue of the validity and enforceability of the arbitration agreement.

The Nursing Home Defendants filed a reply brief in which they insist that the plaintiff's request for discovery is "procedurally improper and substantively without merit" and that the "factual record is more than sufficient to determine that the [DRP] . . . is valid and enforceable." (Doc. No. 31, at 2, 5.)

Because the court finds, as set forth herein, that the Nursing Home Defendants have failed to establish the mutuality of the DRP, the court will deny the Motion to Compel Arbitration without reaching the plaintiff's other arguments.

## II.     ANALYSIS

### A.     Legal Standard

The DRP provides that the "Federal Arbitration Act (FAA) controls and applies to the arbitration of the Dispute, and the Parties agree to incorporate such laws into this Agreement. Otherwise, the Agreement is governed by the law of the state where the facility is located." (DRP ¶ 5, Doc. No. 21-1, at 3.) The parties do not dispute, and the law is clear, that the agreement itself is governed by the FAA. *Accord Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 472 (1989) (parties to an arbitration agreement are free to choose the terms under which they will arbitrate); *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 303 (6th Cir. 2008) (concluding that, where the parties' choice-of-law provision referenced both the FAA and state law, the FAA governed).

Under the FAA, 9 U.S.C. §§ 1–16, where a litigant establishes the existence of a valid agreement to arbitrate, the district court must grant the litigant's motion to compel arbitration and to stay proceedings until the completion of arbitration. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing 9 U.S.C. §§ 3, 4). There is a strong presumption in favor of arbitration under the FAA, *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir.

2003), as a result of which any doubts regarding arbitrability must be resolved in favor of arbitration. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003).

Before the court can send a case to arbitration, however, it must first determine whether a valid agreement to arbitrate exists under state law. 9 U.S.C. § 2. An arbitration agreement may be voided for the same reasons for which any contract may be invalidated under state law, "provided the contract law applied is general and not specific to arbitration clauses." *Fazio*, 340 F.3d at 393. Likewise, "ordinary state-law principles that govern the formation of contracts" apply to the court's analysis. *Id.* at 394 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Accordingly, the court considers the validity and enforceability of the arbitration agreement under the substantive law of Tennessee governing contract formation and interpretation.

### B.      Mutuality of the Agreement

There is no dispute that the signature block provided in the DRP for the "Facility Agent" is blank. (*See* Doc. No. 21-1, at 6.) The Nursing Home Defendants argue that the signature of Michelle Crutchfield, on page five of the agreement, manifests the Nursing Home's intent to enter into the agreement, but Ms. Crutchfield did not sign the agreement on page five in her capacity as Facility Agent. Rather, she signed as a witness to Mr. Whiteaker's signature. (*See id.* at 5.) The court finds that the evidence in the record does not support a conclusion that the agreement was signed by or on behalf of the Nursing Home.

The Federal Arbitration Act states in part that "an agreement in writing to submit to arbitration an existing controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, this court must apply the same analysis for mutual assent to arbitration agreements as it would

apply to any other type of contract.

It is well settled under Tennessee law that a contract, to be enforceable, must, among other things, "result from a meeting of the minds and must be sufficiently definite to be enforced." *Jamestowne on Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 564 (Tenn. Ct. App. 1990) (citations omitted). "The contemplated mutual assent and meeting of the minds cannot be accomplished by the unilateral action of one party, nor can it be accomplished by an ambiguous course of dealing between the two parties from which differing inferences . . . might reasonably be drawn." *Id.*

Typically, assent to a contract is shown by the parties' signatures, but there are exceptions to this general precept. For instance, "[w]hen a contract between two parties which is contemplated to be signed by both is reduced to writing and signed by only one of them, but accepted by the other, it becomes in contemplation of the law, a written binding contract on both." *Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 350 (Tenn.Ct.App.1999) (citations omitted); *see also Staubach Retail Servs.–Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 525 (Tenn. 2005) ("When a party who has not signed a contract demonstrates its assent by performing pursuant to the contract and making payments conforming to the contract's terms, that party is estopped from denying the binding effect of the contract.").

Where there is no such evidence of performance establishing assent, however, Tennessee courts do not presume mutuality. For instance, in *Flanary v. Carl Gregory Dodge of Johnson City, LLC*, No. E2004-00620-COA-R3-CV, 2005 WL 1277850 (Tenn. Ct. App. May 31, 2005), the plaintiff opposed the defendant's motion to compel arbitration (presented as a motion for summary judgment), on the basis that the arbitration agreement between himself and the defendant car dealership was invalid for lack of mutuality. In support of his opposition to the

defendant's motion, the plaintiff pointed to the fact that the arbitration agreement had never been signed by an agent for the dealership. The defendant thereafter attempted to establish mutuality by submitting the affidavit of its general manager, asserting that the arbitration agreement was "prepared by [the dealership], or at its request, and was presented to [Flanary] as a material portion of the sale. The dealership intended to be bound to the [A]greement and believes that it is currently bound by the [A]greement and that it must arbitrate any covered dispute." *Id.* at *9.

The court found that this affidavit, standing alone, did not constitute evidence of pre-dispute intent to be bound by the agreement to arbitrate and that the evidence in the record did not establish that the obligation to arbitrate was mutual:

> Unlike *Buddy Lee* [*supra*], we find no evidence in the record that, prior to the filing of the instant suit, there was any conduct evidencing the dealership's assent to the terms of the Agreement. The affidavit of the dealership's general manager is nothing more than a post-commencement of litigation statement that the dealership considers itself bound by the Agreement. . . . Accordingly, in this summary judgment analysis, we are left with an agreement to arbitrate signed by one party but not by the other. Therefore, on the face of the record now before us, we conclude that there is a genuine issue of material fact as to whether there was mutuality with respect to the obligation to arbitrate in the Agreement.

*Flanary*, 2005 WL 1277850, at *9. (Tenn. Ct. App. May 31, 2005). On that basis, the court denied the defendant's motion. *Accord* *Pine Hills Health & Rehab., LLC v. Matthews*, 431 S.W.3d 910, 915 (Ark. 2014) (affirming denial of nursing home's motion to compel arbitration where the arbitration agreement was not signed by a nursing home representative and there was no pre-litigation evidence in the record of the nursing home's assent to arbitration); *Byrd v. Simmons*, 5 So. 3d 384, 390 (Miss. 2009) (same).

In this case, the Nursing Home Defendants simply assert that the DRP was signed by Michelle Crutchfield as "Facility Witness #1" and that she signed the blank for Facility Representative on the Nursing Home Admission Agreement and, therefore, that "the defendants

were bound to the arbitration agreements' terms as of the date of admission on May 7, 2012."
(Doc. No. 31, at 8–9.). In considering this argument, it is important to recognize that the Nursing
Home did not require Ms. Rodgers to agree to arbitrate in order to be admitted to its facility.
Moreover, the Admission Agreement and the DRP are separate agreements that each stand alone.
While Ms. Crutchfield signed the Admission Agreement as Facility Agent, she did not sign the
DRP in that capacity. And while the Nursing Home's conduct (as evidenced by the
representative's signature on the Admission Agreement and its admission of Ms. Rodgers as a
resident of the facility) indicates its assent to the Admission Agreement, it does not demonstrate
assent to the DRP. The record contains no evidence that the Nursing Home accepted the
arbitration agreement prior to Ms. Caldwell's initiation of this lawsuit.

This court finds that Mr. Whiteaker's signature on the arbitration agreement, in the
absence of the signature of an authorized Nursing Home representative, constitutes an offer that
was never accepted by the Nursing Home. The court finds that the DRP lacked mutual assent
and, therefore, is not a valid contract. *See Byrd*, 5 So. 3d at 390 (finding that an arbitration
agreement signed by the resident but not by a facility representative constituted an unaccepted
offer to arbitrate and not a valid agreement to arbitrate).

## III.   CONCLUSION

For the reasons set forth herein, the court will deny the Nursing Home Defendants'
Motion to Compel Arbitration and deny as moot the plaintiff's request to conduct discovery
related to the agreement to arbitrate.

An appropriate order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge